UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

IN RE SUBPOENA TO
BOARDWALK STORAGE
COMPANY, LLC

CIVIL ACTION (MISC.)
NUMBER 14-39-JJB-EWD

UNDERLYING ACTION
UNITED STATES OF AMERICA
VERSUS

9.345 ACRES OF LAND, MORE
OR LESS, SITUATED IN IBERVILLE
PARISH, STATE OF LOUISIANA, ET AL.

CIVIL ACTION
NUMBER 11-803-JJB-EWD

**RULING ON BOARDWALK STORAGE COMPANY LLC'S MOTION TO QUASH OR IN THE ALTERNATIVE LIMIT THE SUBPOENA TO PRODUCE DOCUMENTS SERVED ON IT BY PLAINTIFF UNITED STATES OF AMERICA**

Before the court is the Motion to Quash or in the Alternative Limit the Subpoena to Produce Documents (the "Motion to Quash," R. Doc. 1) filed by Boardwalk Storage Company, LLC ("BSC"). The Motion to Quash is opposed by the United States.[1] For the reasons set forth herein, the Motion to Quash is DENIED.

**I.     Background**

On September 12, 2013, the United States issued a subpoena to BSC to produce documents.[2] Thereafter, BSC filed the instant Motion to Quash, asserting that certain documents sought via the subpoena constitute trade secrets or other confidential research, development, and commercial information. In response, the United States asserts that the documents requested via

---

[1] R. Doc. 6.

[2] R. Doc. 1-1 and R. Doc. 1-2. The same subpoena was served on BSC's Senior Vice President and General Counsel (R. Doc. 1-1) and on BSC's agent for service of process (R. Doc. 1-2). BSC's Motion to Quash challenges both subpoenas. R. Doc. 1, p. 1.

1

the subpoena relate directly to claims made by BSC's sister company and, even if such documents are secret or confidential, BSC has provided no reason why a stipulated protective order already in place cannot protect BSC's interests.

The underlying suit giving rise to BLM's subpoena is a federal condemnation action, *United States of America v. 9.345 Acres of Land, More or Less, Situated in Iberville Parish, State of Louisiana, et al.*, No. 11-803-JJB-EWD, United States District Court, Middle District of Louisiana (the "Underlying Action").  In the Underlying Action, the United States condemned property located in Iberville Parish, Louisiana for the Strategic Petroleum Reserve.[3]  Specifically, a map of the property taken (included as Schedule D attached to the United States' Complaint in Condemnation) reflects the property taken as Bayou Choctaw Facility, Dome Site Cavern 102.[4]  The sole issue to be determined in the Underlying Action is just compensation for the taking.[5]

## II.   Analysis

### a.   Legal Standards

"Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.  Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1).[6]

---

[3] *See*, R. Doc. 1-1.

[4] R. Doc. 1-4.

[5] *See*, Status Report, R. Doc. 41.

[6] Rule 26(b)(1) of the Federal Rules of Civil Procedure was amended on December 1, 2015 to clarify the scope of discovery.  The 2015 amendments "restor[e] the proportionality factors to their original place in defining the scope of

2

A subpoena may command a non-party to produce designated documents, electronically stored information, or tangible things in his possession, custody, or control. Fed. R. Civ. P. 45(a)(1)(A)(iii). On timely motion, the court may quash or modify a subpoena if it requires "disclosing a trade secret or other confidential research, development, or commercial information." Fed. R. Civ. P. 45(d)(3)(B)(i).

"There is no absolute privilege for trade secrets and similar confidential information." *Occidental Chem. Corp. v. Louisiana Public Service Com'n*, 2008 WL 566833, at *2 (M.D. La. 2/29/08), citing *Centurion Industries, Inc. v. Warren Steurer and Assoc.*, 665 F.2d 323, 325 (10th Cir. 1981). To resist discovery, "a party must first establish that the information sought is a trade secret or other confidential information and then demonstrate that its disclosure would cause an identifiable, significant harm." *Id*. See also, *Diaz v. Goodyear Tire and Rubber Co.*, 2009 WL 1298219, at *2 (M.D. La. 5/8/09) ("the first step in determining whether plaintiffs are entitled to the information at issue in this motion is to examine whether [defendant] has established that the requested information is indeed a protected trade secret."). "Where a business is the party seeking protection, it will have to show that disclosure would cause significant harm to its competitive and financial position." *Occidental Chem. Corp. v. Louisiana Public Service Com'n*, 2008 WL 566833, at *2 (M.D. La. 2/29/08). "That showing requires specific demonstrations of fact, supported where possible by affidavits and concrete examples, rather than broad, conclusory allegations or potential harm." *Id*. If the movant meets this burden of proof, "then the burden shifts to the party seeking the discovery to establish that the requested information is both relevant

---

discovery." Fed. R. Civ. P. 26(b)(1) Advisory Committee Notes (2015). "The amendments to Rule 26 govern in all proceedings in civil cases thereafter commenced and, insofar as just and practicable, in all proceedings then pending." *American Federation of Musicians of the U.S. and Canada v. Skodam Films, LLC*, ---F.R.D. ---, 2015 WL 7771078, at *5 (N.D. Tex. 12/3/15). Given the "restorative nature" of the amendments, the court finds that application of the amended version of Rule 26(b)(1) is "both just and practicable." *See*, *Williams v. U.S. Environmental Services, LLC*, 2016 WL 684607, at n. 2 (M.D. La. 2/18/16).

3

and necessary." *Diaz v. Goodyear Tire and Rubber Co.*, 2009 WL 1298219, at *2 (M.D. La. 5/8/09). "'It is within the sound discretion of the trial court to decide whether trade secrets are relevant and whether the need outweighs the harm of disclosure. Likewise, if the trade secrets are deemed relevant and necessary, the appropriate safeguards that should attend their disclosure by means of a protective order are also a matter within the trial court's discretion.'" *M-I LLC v. Stelly*, 733 F. Supp. 2d 759, 802 (S.D. Tex. 2010), quoting *R.C. Olmstead, Inc. v. CU Interface, LLC,* 606 F.3d 262, 269 (6th Cir.2010) (quoting *Centurion Indus., Inc. v. Warren Steurer & Assocs.,* 665 F.2d 323, 326 (10th Cir.1981)).

### b. The Subpoena to BSC

The subpoena issued to BSC requests production of nine categories of documents. BSC asserts in its briefing that it has no documents responsive to categories three, four, or six.[7] With regard to the remaining categories, BSC asserts that it will produce certain responsive documents subject to the existing protective order.[8] However, with respect to requests one, five, and seven, BSC asserts that the requests "clearly require production of trade secrets and confidential commercial information [and that] disclosure of this information will cause significant commercial harm to BSC."[9] Accordingly, the three requests actually at issue in BSC's Motion to Quash are as follows:

> 1. All documents related to that certain NG storage contract dated July 24, 2013, by and between You and Dow (the "Shipper").... This category includes any document related to the

---

[7] R. Doc. 1, p. 6.

[8] R. Doc. 1, pp. 6-7 ("The documents responsive to Requests 1, 2, 5, 7, 8, and 9 that do not constitute trade secrets or confidential information are made up of contract documents and correspondence regarding the recently negotiated Dow contract (Request 1), HUB Services and Parking and Lending agreements (Request 2), Wheeling agreements (Request 8), and documents and correspondence related to considered or planned Open Seasons for natural gas storage capacity at Bayou Choctaw Hub since August 15, 2012 (Request 9). These documents will be produced subject to the existing protective order in place.").

[9] R. Doc. 1, p. 8.

negotiation of the Dow Contract, any spreadsheet or analysis of the storage rates or other financial terms of the Dow Contract, any solicitation, response to solicitation, or inquiry that led to the negotiation of the Dow Contract, any spreadsheet or analysis of other storage contracts (past, present or prospective) with the Shipper or any entity related to the Shipper as a parent, affiliated or subsidiary company (or the predecessors to any such company), or any other document related to the formation and execution of the Dow Contract.

5. All documents related to any forward looking projections or analysis that considers NG storage contract rates associated with storage capacity at the Bayou Choctaw Hub for which existing storage contracts are set to expire in less than 5 years.

7. All documents related to any analysis of existing storage contract rates or storage contracts at the Bayou Choctaw Hub since January 1, 2011.[10]

BSC argues that the above requests "specifically seek documents regarding BSC's forward looking projections or analysis relating to natural gas storage pricing. These requests are seeking the inside playbook of BSC regarding how storage is valued and priced, the disclosure of which would be detrimental to BSC's ability to competitively negotiate and contract within the industry."[11] BSC further explains that while it "is producing the recently negotiated contract with Dow Hydrocarbons along with documents relating to the negotiation and consummation of that contract…," it seeks to withhold "any proprietary and confidential pricing projections and analyses."[12]

In support of BSC's position that the documents requested are proprietary and confidential, it submits the affidavit of Michael McMahon, Senior Vice President and General Counsel of BSC.[13] Therein, Mr. McMahon states that BSC's pricing projections and analyses "constitute

---

[10] R. Doc. 1-1, p. 3.

[11] R. Doc. 1, p. 7.

[12] R. Doc. 1, p. 9.

[13] R. Doc. 1-3.

5

trade secrets and Boardwalk Storage does not disclose its pricing projections and analysis to anyone outside the company."[14]  Mr. McMahon further asserts that BSC has taken steps to protect its internal pricing information, projections, and analyses such as "designation of pricing information as confidential and training its personnel that such information should not be disclosed to anyone outside of the Company."[15]  Mr. McMahon asserts that production of the requested documents would cause significant commercial harm to BSC.  Specifically, he states that BSC's "customers would necessarily know Boardwalk Storage's 'bottom line' and its ability to negotiate above that number would be placed in jeopardy, thus placing it [at] a significant disadvantage when negotiating natural gas storage contracts."[16]  He further states that "[d]isclosure of its pricing methodology would be known to its competitors who would understandably use it against Boardwalk Storage and perhaps other affiliates in attempting to attract or generate business."[17]

In response to BSC's assertions that documents responsive to requests one, five, and seven are confidential trade secrets, the United States asserts that BSC has not provided a privilege log to allow it or this court assess BSC's claim.[18]  The United States further argues that BSC's position that these documents are not disclosed to anyone outside the company is undermined by emails already produced by BSC, which "indicated" BSC "was prepared to provide Dow with the information encompassed within the subpoena in order to support a counteroffer."[19]

---

[14] R. Doc. 1-3, ¶ 9.

[15] R. Doc. 1-3, ¶ 9.

[16] R. Doc. 1-3, ¶ 11.

[17] R. Doc. 1-3, ¶ 11.

[18] R. Doc. 6, p. 9.

[19] R. Doc. 6, p. 9.  The court does not agree with the United States that the referenced email is proof-positive that BSC's pricing projections and analyses (including methodologies, formulas, etc.) are not trade secrets or are shared outside BSC or its family of companies.  The email in question indicates only that BLM (allegedly BSC's sister company) considered making a counteroffer during negotiations with Dow to the extent it could present a "sound case" for doing so.

6

As noted by BSC, "'trade secrets' have been routinely defined as a 'formula, pattern, device, or compilation of information used in a business, which gives the owner an opportunity to obtain an advantage over his competitors who do not know or use it.'"[20] Moreover, "[c]ustomer lists, pricing information, client information, customer preferences, buyer contracts, and marketing strategies have all been recognized as trade secrets."[21] Here, the court agrees that BSC's methods and formulas, as well as its analyses and projections of natural gas storage pricing constitute trade secrets. Accordingly, the court must next consider whether the United States has established that disclosure of this information is relevant and necessary.

The United States argues that BSC's actual predictions "made in the ordinary course of the business of contracting storage rates at the Bayou Choctaw facility" are relevant "to the United States' defenses against BLM's claims and the United States' own analysis of the Bayou Choctaw facility's income producing potential and the impacts of the loss of the storage cavern acquired to that facility."[22] In contrast, BSC asserts that while the actual storage rates negotiated and agreed to may be discoverable, "[t]he internal methodology and analyses of pricing developed and employed by one individual company, as contrasted with the ultimate and agreed end price or rate in a consummated market transaction, is not information properly relied upon by valuation experts."[23] The court agrees with the United States that BSC's analyses and predictions regarding storage rates at the Bayou Choctaw facility are relevant. Such predictions and analyses (including,

---

[20] R. Doc. 1, p. 8 (citing *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007)).

[21] *Rimkus Consulting Group, Inc. v. Cammarata*, 255 FRD 417, 441 (S.D. Tex. 2008). Similarly, under Louisiana law, a trade secret is defined in La. R.S. § 51:1431(4) as "information, including a formula, pattern, compilation, program, device, method, technique, or process that: (a) derives independent economic value, actual or potential, from not being generally known to and not being readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use, and (b) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy."

[22] R. Doc. 6, p. 10.

[23] R. Doc. 1, p. 10.

7

in BSC's own words, its "bottom line") are presumably based on BSC's own commercial expertise in valuing the Bayou Choctaw facility and are relevant to the issue of compensation. *See*, *e.g.*, *Levy v. US*, 402 Fed. Appx. 979, 982 & 983 (5th Cir. 2010) (finding admission of evidence of ongoing negotiations admissible and explaining that "[o]ffers to buy and sell property may not be admissible as evidence of fair market value. It depends on the specifics of each case….Here, the proposals came from identified, sophisticated developers who could be reasonably expected to have investigated the value of the land before making a proposal.").

Finally, BSC has forwarded no reason why the Stipulated Protective Order in place in the Underlying Action (the "Protective Order") is insufficient to protect its confidential information.[24] Per the Protective Order, "[a]ny party or non-party may designate as 'confidential' (by stamping the relevant page 'Confidential') any document or response to discovery which that party or non-party considers in good faith to contain information involving trade secrets, or confidential or proprietary business or financial information….".[25] The intention of the Protective Order was to address defendants' concerns that "certain records and information to be produced in discovery will contain sensitive competitive business information, the disclosure to third parties of which may cause harm to a disclosing party's competitive position in the marketplace or may compromise proprietary information such as trade secrets, formulas, price lists, product designs, business strategies, and competitive bids."[26] The court finds no reason – and BSC has offered none – that the current Protective Order will not adequately protect BSC. *See*, *Richardson v. Axion Logistics*, 2013 WL 5554641, at *5 (M.D. La. 10/7/13) ("To the extent Axion objects to the

---

[24] *See*, R. Doc. 62.

[25] R. Doc. 62, p. 2.

[26] R. Doc. 62, p. 1. BLM, the alleged sister company of BSC, filed the Unopposed Motion for Entry of the Stipulated Protective Order. R. Doc. 60.

subpoena on the grounds that the disclosure of such commercial information should be restricted, such a remedy can be fashioned in the form of a protective order on terms proposed by the parties.").

### III. Conclusion

For the reasons set forth herein, the Motion to Quash (R. Doc. 1) is DENIED.

Signed in Baton Rouge, Louisiana, on April 5, 2016.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**